# Williams *v.* Williams.

### *Bill to Correct Description of Deed.*

(Decided June 19, 1913.　62 South. 843.)

*Reformation of Instrument; Evidence; Mistake.*—The evidence examined and held sufficient to sustain the finding of the Chancellor that an exception in the deed of three-fourths of an acre was intended to be an exception of only a one-half interest in that three-fourths of an acre, which the grantor had conveyed to another theretofore.

APPEAL from Lauderdale Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by W. R. Williams against R. L. Williams to correct a description in a conveyance of land. From a decree granting the relief prayed the respondent appeals. Affirmed.

The deed from R. L. Williams and wife to W. R. Williams contained the following description of the land conveyed: 'The N. W. ¼ of the N. W. ¼, sec. 27, and the N. W. ¼ of the N. W. ¼, sec. 32, all in township 1, range 7 west, containing 80 acres, more or less, except ¾ of an acre in the N. W. corner of the S. W. ¼ of the S. W. ¼, sec. 27, township 1, range 7 west. A right of way is allowed on the three-fourths of an acre for a millrace, also through the tract of land, together with the appurtenances thereunto belonging."

MITCHELL & HUGHSTON, for appellant. The burden was on complainant to satisfy the court as to the mutual mistake, and this burden was not carried.—*Hammer v. Lange,* 56 South. 573; *Greil v. Tillis,* 54 South. 524.

A. A. WILLIAMS, for appellee. The evidence is sufficient to sustain the finding of the chancellor.—*Walker v. Frierson,* 60 South. 57; Sims Ch. sec. 489, et seq.

McCLELLAN, J.—W. R. Williams (appellee) filed this·bill against R. L. Williams (appellant) for the· purpose of having a certain conveyance of land, executed to complainant by respondent, corrected in respect of the description of an half interest in three-quarters of an acre in the northwest corner of the southwest quarter of the southwest quarter of section 27, township 1, range 7 west, in Lauderdale county, Ala. The theory of the bill is that the error mentioned was the result of mutual mistake of the parties. The chancellor accorded the relief prayed.

The only assignment of error urged in brief for appellant is ·that presenting for review the soundness of the chancellor's conclusion upon the evidence, his finding of fact. The earnest insistence of appellant's solicitors to this end has been carefuly considered in con‑ nection with the whole evidence and so in the light of the applicable rules of law, including ˙the degree of certainty in the proof in order to invite or justify relief in such cases, reiterated in *Hammer v. Lange,* 174 Ala. 337, 56 South. 573. After such consideration we are · not convinced, though the evidence is keenly conflicting at several material points, that the chancellor's conclusion is founded in. error.

W. R. Williams (complainant) is the father of R. L. Williams and W. J. Williams. The father was about 75 years of age when the conveyance in question was executed. The son W. J. Williams attended to the transaction for the father. The relations between these sons had not been friendly, much less brotherly. One Birch appears to have participated in the negotiations for the sale of the lands, though W. J. and R. L. Williams later effected the trade without an intermediary. According to the testimony of Birch—and as to this there is no dispute in the evidence—the land in contro-

versy was a part of "the old home place of W. R. Williams that he lives on now." In the year 1901, the father conveyed 80 acres, including the land in question, to R. L. Williams. In the year 1903 R. L. Williams conveyed an half interest in the three-quarters of an acre above described to W. J. Williams. On this lot a storehouse was built. September 9, 1907, the conveyance here sought to be corrected was executed.

The report of the appeal will contain the quotation of that part of the instrument descriptive of the subject of the conveyance, including the exception and the *allowance* of the right of way for millrace.

The particular point at which complainant claims error intervened is in respect to the exception from the conveyance of a half interest in the three-quarters of an acre; his contention being that the intent, common to both parties, was to convey *back* to the father all the land received from him in 1901, except the half interest in the fractional plot which R. L. had conveyed to W. J. Williams in 1903.

R. L. Williams, his wife, Lina Williams, and the justice who wrote the deed, each testifies that the instrument accorded with the agreement of the parties (the father acting through W. J.) and directions given for the preparation thereof. On the other hand, W. J. Williams testified that the agreement was as complainant contends, while Luke Williams and J. C. Birch testify to matters confirmatory of complainant's contention. Birch, at the instance of R. L. Williams, bore a proposition for a sale *back* by the latter. This proposition did not contain the exception here involved. Birch and Luke Williams do not appear to have any interest in the contest, or such vitiating prejudice as would reflect upon their credibility—certainly not to the extent or degree of that necessarily entertained by R. L. Wil-

liams or his wife. To the justice there may be natural-
ly imputed at least a degree of partiality toward the
maintenance unimpaired or unchanged of his product.
Nevertheless, if we treat the respective testimony on
the particular controlling issue of what the agreement
was, as being in equipoise, the circumstances must and
do cast the result as the chancellor found and enforced
it.

In the first place, it is easy to conceive, on the evi-
dence, that the scrivener confused the half interest in
the plot conveyed in 1903 by R. L. to W. J. Williams
with the reservation or exception, in this relation, he
wrote in the instrument. While it should have occur-
red to all that no reservation or exception, by the gran-
tor of the interest conveyed in 1903 to W. J., was at all
appropriate to the conveyance *as such,* yet from the evi-
dence it readily appears that this previous conveyance
to W. J. was constantly in the minds of the parties,
minds not accustomed to consider legal effects. The
deed (of 1907) itself reflects upon its own accuracy as
a memorial when it is noted that the consideration re-
cited is $500, whereas all the parties agree that $600
was the consideration paid to R. L. Williams. Aside
from the evidence bearing immediately upon the issue
of what the agreement was, it is not possible to read the
evidence without concluding that the first and pervad-
ing suggestion or motive for a sale and purchase was to
restore the land to the status of ownership existing
when the 1901 deed was made, excepting of course the
change made by the conveyance to W. J. by R. L. in
1903. To take out of this general purpose any part of
the land (other than that conveyed in 1903), an ex-
ception must have been made. To effect this was to
leave R. L. with an undivided half interest in the
"storehouse lot," which, under the evidence, appears

[Williams v. Williams.]

to have had a very respectable relative value. R. L. testified that he sent Birch with this proposition: That "he would take $600 for the land." Such was Birch's testimony. This offer contained no exception. "For the land" evidently comprehended *all* R. L. could convey. He testified further: "After they had gone it occurred to me that I could not deed all of this land back, as I had some time before deeded W. J. Williams a half interest in the storehouse lot, being the three-fourths of an acre excepted from the deed." He further testified that subsequently he told to W. J. that he had decided to "leave out the three-fourths of an acre from the deed," and that W. J. agreed. This is denied by W. J.

In this state of the evidence the conduct of R. L. Williams with respect to the storehouse lot, its care and rental, impresses us as being of large importance and just influence in its effect upon the solution of the issue. While R. L. Williams testified that he repeatedly claimed a half interest in the storehouse lot and demanded a moiety of the rent from two of the tenants therein—tenants put there by the complainant or his agent—the evidence, as a whole, leaves no doubt that there was a considerable period after the deed was executed when his inaction consisted only with the notion that he had parted with his entire interest in the land conveyed to him by his father in 1901. There is no explanation of this silence on his part than that he thought his entire interest had been conveyed. It is not conceivable that an owner, even in part, would be so indifferent, not only as to who was, or were, the tenants of joint property, but also as to the rental contract and its terms.

We have again considered our ruling in the case of *Greil v. Tillis*, 170 Ala. 391, 54 South. 524. The facts

[Caldwell, et al. v. Caldwell, et al.]

there passed upon are, as there appears, very different from those here under view.

The decree is affirmed.

Affirmed.

DOWDELL, C. J., and SAYRE and SOMERVILLE, JJ., concur.